RECEIPT # 02468
AM $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK
DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEIDI A. BAER,         Plaintiff, | ) ) ) ) |
| v. | ) )  CIVIL ACTION NO. _____ |
| NATIONAL BOARD OF MEDICAL EXAMINERS,         Defendant. | ) )  05-1072 ) ) ) |

MAGISTRATE JUDGE

## VERIFIED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiff Heidi A. Baer ("Baer") alleges as follows:

### INTRODUCTION

1. This is an action for emergency, preliminary and permanent injunctive relief and for attorneys' fees and costs incurred in bringing this action based on the National Board of Medical Examiners' ("NBME" or "Defendant") unlawful and unreasonable refusal to provide reasonable accommodations to Baer pursuant to the Americans With Disabilities Act ("ADA") and the Massachusetts Public Accommodations Statute.

2. Baer is an accomplished third year medical student at Drexel University College of Medicine ("Drexel") located in Philadelphia, PA. In order for Baer to obtain her medical licensure, she is required to pass three separate phases of the U.S. Medical Licensing Examination ("USMLE"), commonly referred to as Steps 1, 2 and 3. Baer is currently preparing to take Step 1 of the USMLE - the initial phase of examinations - on or before May 5, 2005, in Boston, Massachusetts. Baer suffers from a learning disability and ADHD. The Defendant has illegally refused and continues to refuse to accommodate Baer's disabilities by refusing to provide Baer additional time to take the USMLE Step 1.

3. Baer's situation is further exacerbated by the fact that her medical school generally expels students who cannot pass the USMLE Step 1 after three attempts. Indeed, Ms Baer has had to petition the administration at Drexel for permission to take the Step 1 a fourth time. Should she fail to achieve a passing score on the May 2005 administration of the USMLE Step 1, Baer will be expelled from medical school and her career in medicine will be over.

4. Baer seeks a preliminary and permanent injunction prohibiting the NBME from continuing its unlawful refusal to provide accommodations to Baer and compelling the NBME to allow Baer to take each step of the USMLE with the accommodation of time and one-half within which to take the exams.

## PARTIES

5. Baer is a resident of Quincy, Massachusetts, and has completed her second year of instruction at Drexel.

6. NBME is a District of Columbia non-profit organization headquartered in Philadelphia, PA. NBME administers the USMLE, which is required for completion of medical school, internship, and residency requirements and for medical licensure in the United States. The NBME administers the USMLE throughout the country, including in Massachusetts.

## SUBJECT MATTER JURISDICTION, PENDENT JURISDICTION, AND VENUE

7. This action arises under the laws of the United States, specifically the ADA. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has jurisdiction pursuant to 42 U.S.C. § 12188(a)(1), providing for civil actions in this Court by any person subjected to discrimination on the basis of disability in violation of Title III of the ADA.

8. This Court has pendent jurisdiction over Baer's state law claim, which arises out of the same acts and occurrences as the federal ADA claim.

2

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as (a) the Defendant is doing business in this judicial district by virtue of administering the USMLE Step 1 in this district, (b) Baer is a resident of this district, and (c) on August 13, 2004, Baer took the Step 1 exam in this district without her requested accommodation from the Defendant, in violation of state and federal law.

## FACTS

10. Baer has completed her second year of instruction at Drexel. As part of her preparation for the third year of medical school, Baer is required to take the USMLE Step 1.

11. Baer suffers from a learning disability and ADHD. In particular, Baer has a learning disability that seriously impairs her ability to read, comprehend and process written material at the same rate as most people. The ADHD limits her ability to focus and concentrate. Alone and together, these disabilities hamper her ability to communicate her knowledge in standard timed-test environments to such a degree that she needs an accommodation to allow her to minimize the effect of her disability on her ability to demonstrate her knowledge on standardized exams such as the USMLE Step 1.

12. Although Baer's impairments were not formally diagnosed as such when she was a child, and despite the fact that she possesses an overall IQ in the 99th percentile, Baer has suffered throughout her life with difficulties in reading, comprehension, and concentration. *See* Dr. Cheryl Weinstein's Neurological Consultation (the "Weinstein Report"), attached hereto as *Exhibit A*.

13. Baer was born in October 17, 1974 via a difficult forceps delivery, and subsequently suffered a grand mal seizure at the age of two. Shortly thereafter, Baer was given an EEG, which her doctor interpreted as "abnormal," and she was diagnosed with a possible cicatrix. Recently, Baer was given another EEG, which was interpreted as being consistent with her forceps delivery and her

3

current experience with migraine headaches. *See* August 28, 2003 Electroencephalogram Report, attached hereto as *Exhibit B*.

14. Baer attended Milton Academy ("Milton Academy") in Milton, Massachusetts, from kindergarten through high school. While at Milton Academy, Baer's learning impairments were recognized early on by her instructors. One of Baer's teachers described her as having had "difficulty processing information quickly and [needing] extra time to complete quizzes." *See* August 23, 2003 letter from Scott Ford, attached hereto as *Exhibit C*.

15. Overall, the assessments of Baer's teachers at Milton describe her as intelligent, but having difficulty focusing on her work, particularly the technical aspects associated with language skills, reading and writing. Based on her teachers' evaluations, it was recommended that Baer be given extra time to complete examinations. *Exhibit A* at p. 3. Further, Baer was sent to see a Dr. Patricia Boyle because her teachers questioned why she had such difficulty taking exams and concentrating.

16. Baer's learning difficulties continued in high school. Her academic evaluations indicate that, while she was an enthusiastic and hard-working student, she needed to pay greater attention to the detail in her written work so as to ensure its accuracy. *See* Milton Academy Advisor's Reports, attached hereto as *Exhibit D*. One teacher specifically stated that Baer constantly "confused small and capital letters, has trouble with commas in series and quotations, and apostrophe and plural formation need review." *Id*.

17. In light of her problems reading, writing and correctly processing written information, Baer generally was provided with more time to complete her high school examinations. Additionally, Ms. Baer received significant private tutorial assistance, spent substantial time improving organizational skills, and worked extensively with her parents to complete homework assignments and other projects.

4

18. Following her graduation from Milton Academy, Baer attended Duke University where she majored in English. This decision was prompted, in large part, because English is not an area of study typically subject to strictly timed tests. Baer's desire to attend medical school after graduation, however, required her to take a number of math and science classes in which her knowledge of course material was assessed by her performance on timed, multiple-choice examinations. To manage her learning disability on these exams, Baer obtained substantial tutorial assistance and spent countless hours practicing for these exams by taking previously given versions of the tests. Nevertheless, Baer's performance in these classes was inferior as compared to her performance in classes that did not require her to take timed examinations. *See* Duke University Transcript, attached hereto as *Exhibit E*.

19. During her final year at Duke, Baer began to ready herself for the Medical College Admission Test ("MCAT"), a required element of admission for all prospective students seeking matriculation into medical school. For example, Baer enrolled in a "Princeton Review Course," designed to help prepare students for the MCAT by offering and administering full-length, timed practice exams and through instruction on various test-taking strategies and techniques.

20. After completing the review course, Baer sat for the August 1995 administration of the MCAT, but was unable to complete any of the four sections on the exam in the time allotted. As a result, Baer only achieved a score of 19 - well below the national average and patently insufficient for admission into any reputable medical school. *See* August 1995 MCAT Score Report, attached hereto as *Exhibit F*.

21. Following her graduation from Duke, and as a result of her poor results on the August 1995 MCAT, Baer enrolled in the Harvard University Extension School, where she spent the next two years re-taking all of the basic science courses tested on the MCAT -- classes that she had

5

already completed as an undergraduate. In addition, Ms. Baer enrolled in yet another, more intensive, MCAT test preparation program offered by Kaplan.

22. These measures, however, proved fruitless. In August 1997, Baer again sat for the MCAT and was unable to complete the exam within the allotted time. Consequently, Baer achieved a score of 20 on the exam, which was, again, well below average. *See* August 1997 MCAT Score Report, attached hereto as *Exhibit G*.

23. After her second poor performance on the MCAT, Baer realized that the difficulties she was having with the exam were not for lack of effort or failure to comprehend the source material. Rather, her learning disability prevented her from reading and processing the exam questions fast enough to complete the test.

24. Consequently, in October 1998, Baer met with a psychologist, Dr. Christopher Connolly, who administered a battery of formal intellectual assessment diagnostics on Baer, including the Wechsler Adult Intelligence Scale ("WAIS") and the Nelson Denny Reading Test ("NDRT"). *See* Report of Dr. Christopher Connolly, Ph.D. (the "Connolly Report") at pp. 1-2, attached hereto as *Exhibit H*. Baer was tested on the WAIS as having a Verbal IQ in the 99th percentile, a Performance IQ in the 95th percentile and a Full Scale IQ in the 99th percentile. *Id.* Her overall reading comprehension as measured by the NDRT, however, was only in the 23rd percentile. *Id.* at p. 2. Based on these test scores, Dr. Connolly diagnosed Baer with dyslexia. *See* February 3, 1999 letter of Dr. Christopher Connolly, Ph.D., attached hereto as *Exhibit I*. He also recommended that Baer be afforded additional time to complete timed examinations, and concluded that "[while Baer] had superb verbal intelligence as well as nonverbal intelligence . . . [and] showed strengths in her written language and math . . . [her] <u>reading rate was quite slow and significantly reduced for a college graduate of her level of intelligence</u>." *Exhibit H* at p. 3.

6

25.  Based on Dr. Connolly's diagnosis and his recommendations, Baer applied to the Association of Medical Colleges ("AMC"), the group who administers the MCAT, for a time extension accommodation on the exam. The AMC granted Ms. Baer's accommodation request and provided her with time and one-half within which to complete the November 1999 administration of the MCAT. *See* USMLE Certification of Prior Test Accommodations, attached hereto as *Exhibit J*. With the added time, Baer was able to complete the exam and her score skyrocketed from 20 to 28. *See* 1999 MCAT Score Report, attached hereto as *Exhibit K*.

26.  Baer's MCAT score was good enough to gain her admittance into Drexel College of Medicine. At Drexel, however, Baer did not request any accommodations. As a result, she continued to struggled to complete timed, multiple-choice examinations because of her learning disability, despite a strong understanding of the underlying material. Indeed, Baer's inability to complete her examinations forced her to withdraw from several of her required first-year medical school classes because her grades were below the pass range in those courses. As a result, Baer was forced to take an additional year to complete her first-year studies.

27.  Faced with an extra year of medical school, and at the urging of several medical school advisors and professors, Baer requested and received additional time on her exams as a reasonable accommodation to assist her in managing her learning disability. *See Exhibit J*. Since that time, Baer's academic standing has improved dramatically. In particular, during her second academic year of medical school, Baer honored one course (Pathology and Lab Medicine) and high-passed three others (Bioethics, Introduction to Clinical Medicine and Psychopathology). *See* Drexel Academic Transcript, attached hereto as *Exhibit L*.

28.  As with her marked improvement on the MCAT, the dramatic change in Ms. Baer's grades from her first year of medical school to her second is attributable to her utilization of a

7

reasonable accommodation for her learning disability, namely an extension of time within which to complete her exams.

## THE USMLE

29.     Before continuing with the third year of medical school, Drexel requires students to take the USMLE Step 1. Performance on the USMLE Step 1, in addition to being a prerequisite to continuing medical studies, is a primary factor used to determine where a candidate may qualify and be accepted for residency training.

30.     During her second year of medical school, Baer prepared for the Step 1 exam by taking a practice version of the test administered by Drexel. Baer was allotted time and one-half within which to complete the test, and received a score of 60, which placed her in the 30th percentile of her class. A score of 64 was considered passing.

31.     Subsequently, in May 2003, Baer took a second practice test, this time without the additional time accommodation. Naturally, Ms Baer fared much worse, scoring only a 52 on the exam, which placed her in the bottom five percent of her class. Again, a score of 64 was considered passing. Not coincidentally, students generally perform better on the second practice exam, after their academic courses have concluded and after having spent considerable time studying for their comprehensive final exams.

32.     Nevertheless, Ms Baer applied to take the June 28, 2003 administration of the USMLE Step 1. Given her performance on the two practice exams, Baer submitted a request to Defendant for a reasonable accommodation based on her documented learning disability. In support of her request, Ms. Baer presented Defendant with the Connolly Report and a Psychological Evaluation generated by Ms. Danielle Kerns and Dr. Evan Forman (the "Kerns/Forman Report"), in which she was diagnosed has having a reading disorder. *See* Kerns/Forman Report at p. 8, attached hereto as *Exhibit M*.

8

33. On June 11, 2003, without any independent interview, evaluation or testing of Baer's learning disability, the NBME denied Baer's request for accommodation as insufficient. *See* June 11, 2003 letter from NBME to Baer, attached hereto as *Exhibit N*. The NBME simply dismissed the evaluations and diagnosis contained in both the Connolly and Kerns/Forman Reports, calling the reports "incomplete and non-comprehensive." *Id.* The NBME also relied on Baer's average performance on certain diagnostic tests as reflective of her lack of disability. *Id.* As a result, on June 28, 2003, Baer sat for the USMLE Step 1, without accommodation, and failed with a score of 167. *See* June 28, 2003 USMLE Step 1 Score Report, attached hereto as *Exhibit O*.

34. In October 2003, Ms. Baer again petitioned the NBME for an accommodation of additional time to take the December 2003 administration of the Step 1 exam. In support of this request, Baer submitted the evaluations of additional doctors, including Dr. Penny Prather, Ph.D., a neuropsychologist. *See* Report of Neuropsychological Consultation by Dr. Penny Prather, Ph.D., attached hereto as *Exhibit P*.

35. Dr. Prather reviewed the findings contained in the Connolly and Kerns/Forman Reports, and performed additional diagnostic tests on Baer to determine whether a learning disability was present. *Id.* at pp. 1-3. Dr. Prather concluded that Baer suffers from a language based learning disability. *Id.* at p. 7.

36. Dr. Prather also addressed the NBME's assertion that Baer's average performance on some tests indicated that she did not suffer from a disability, and concluded that the inexperience of Ms. Kerns in administering several learning disability diagnostics resulted in Baer's seemingly average performance on certain diagnostics. *Id.* at pp. 9-10.

37. On November 17, 2003, despite receiving Dr. Prather's report from Baer, Defendant summarily denied Baer's second accommodation request. In this instance, the NBME objected to the failure of Baer's doctors to assign her with a Diagnostic and Statistical Manual of Mental

9

Disorders, Fourth Edition ("DSM-IV") diagnosis. *See* November 17, 2003 letter from NBME to Baer, attached hereto as *Exhibit Q*. Furthermore, in light of Dr. Prather's contradictory findings regarding the discrepancies between Baer's performance on certain diagnostics, the NBME shifted gears and relied on Baer's SAT scores -- to the exclusion of all of her other test experiences -- as being indicative of Baer's ability on timed tests. *Id.*

38. Consequently, Baer was forced to take the USMLE Step 1 without accommodation for a second time on December 19, 2003. As expected, Baer failed the exam, this time with a score of 176. *See* December 19, 2003 USMLE Step 1 Score Report, attached hereto as *Exhibit R*.

39. Baer petitioned the NBME for a time extension accommodation again in May of 2004. This time, in an attempt to address the concerns stated by the NBME, Baer submitted a Neuro/Psychoeducational Report prepared by Dr. Marilyn F. Engelman, Ph.D (the "Engleman Report"), a prominent expert in diagnosing learning disorders.

40. Dr. Engelman administered and/or analyzed Baer's results on a wide range of tests, including the Wechsler Adult Intelligence Scale - Third Edition, the Wechsler Abbreviated Scale of Intelligence and the Woodcock-Johnson Psycho-Educational Battery. Each of these tests is specifically approved by Defendant to assess learning disabilities. *See* the Engleman Report at pp. 4, 7-12, attached hereto as *Exhibit S*.

41. Based on Baer's results on the these and other diagnostic exams, Dr. Engelman concluded that Baer has several learning impairments, and assigned her with the following specific DSM-IV diagnoses, as demanded by the NBME: (1) a reading disorder, DSM-IV 315.00; (2) a learning disorder, not otherwise specified, DSM-IV 315.9; (3) Attention Deficit, Hyperactivity Disorder ("AD/HD"), Inattentive Type, DSM-IV 314.00; and (4) learning disabilities in the areas of executive functioning, visual associative skills, auditory attention, and cognitive fluency. *Id.* at p. 14.

42. Nevertheless, the NBME again denied Baer's accommodation request. As a result, Baer took the USMLE Step 1 for a third time, without accommodation, on August 13, 2004, and achieved a failing score of 172. *See* August 13, 2004 USMLE Step 1 Score Report, attached hereto as *Exhibit T*.

43. After her repeated attempts at passing the Step 1 exam failed, Baer consulted with yet another expert in the field of learning disabilities in an effort to provide Defendant with further documented evidence of her condition. In late-October and early-November 2004, Baer submitted to a neuropsychological evaluation conducted by Dr. Cheryl Weinstein, Ph.D., a well-respected expert in the field of neuropsychological studies.

44. Dr. Weinstein personally performed a battery of diagnostic tests on Ms. Baer, and was able to examine her difficulties first hand. *See, generally, Exhibit A*. The results of these diagnostic tests conclusively demonstrate that Baer suffers from severe language based and reading disorders that affect her ability to perform on timed examinations. *Id.* at pp. 6-8.

45. Dr. Weinstein specifically found that "[e]xtended time on timed tests is in order given Ms. Baer's longstanding history of slowed reading and her history of accommodations. . . . This recommendation is also based on her slowed reading rate on the Nelson Denny Reading Test-Form G (3rd Percentile Rank) and her slowed reading fluency on the Woodcock-Johnson Test of Achievement-III (Reading Fluency: 13th Percentile Rank; Sound Blending: 22nd Percentile Rank; Woodcock-Johnson Diagnostic Reading Battery: 22nd Percentile Rank) when compared with individuals of comparable age." *Id.* at p. 8.

46. In addition, Dr. Weinstein concluded that "[w]hile [Baer's] intellect is well above average to superior and while she has very strong reasoning abilities, it is clear that a learning impairment that substantially limits her ability to read rapidly, to organize information and rapidly plan how to proceed is present and represents a deficit when compared to the general population. . .

. Moreover, her problems rapidly retrieving language make it harder for her to learn and quickly demonstrate what she knows." *Id.* at p. 6.

47. Moreover, Dr. Weinstein fully explored Baer's childhood and family history for evidence of a disability. *Id.* at pp. 3, 7. As explained in detail in her report, Dr. Weinstein noted that Baer's childhood is replete with situations where her learning disability impeded her success. *Id.* Furthermore, Dr. Weinstein confirmed that both Ms. Baer's father and brother suffer from reading and/or learning impairments. *Id.* at p. 7

48. Based on Baer's test results, her history of reading difficulties dating back to childhood and the frequency of learning difficulties within her immediate family, Dr. Weinstein diagnosed Baer as having a language-based learning and reading disorder that substantially limits her ability to read and react to the written word as compared to most people. *Id.*

49. Finally, Dr. Weinstein assessed whether Ms. Baer was malingering. *Id.* at p. 6. By personally administering the tests, Dr. Weinstein was able to conclude that, in fact, Baer was not malingering. To the contrary, Dr. Weinstein concluded that "Ms. Baer works so hard to succeed *but* her inefficient style and slowed processing ultimately interferes with her ability to read and write efficiently." *Id.*

50. As such, Dr. Weinstein explicitly concluded that "without [an accommodation of additional time a] timed test [will continue to assess] her speed in answering a question rather than her knowledge of medical material." *Id.* at p. 8.

51. On November 24, 2004, Baer provided the NBME with a copy of Dr.Weinstein's report, along with a personal statement, scholastic evaluations from Milton Academy, diagnostic evaluations from three other doctors supporting the fact that she suffers from a disability, and her college and medical school transcripts, as evidence of her learning disabilities and entitlement to an accommodation under the ADA.

12

52. The NBME again refused to accommodate Baer's disability, and characterized various elements of Ms. Baer's supporting documentation as insufficient. *See* January 14, 2005 letter from NBME to Baer, attached hereto as *Exhibit U*. In particular, the NBME dismissed Baer's low test scores on certain diagnostic tests because such scores were "raw" rather than "scaled," and thus "not readily interpretable." *Id.* Moreover, the NBME ignored Dr. Engelman's diagnosis of Baer's AD/HD, stating that there was insufficient evidence that she suffered from the disorder either currently or during childhood. *Id.* Finally, Defendant again referred to certain diagnostic test results where Baer scored in the average test range as being indicative of her true reading and learning capabilities, while casually dismissing those test scores indicating that Baer is, in fact, learning disabled. *Id.*

53. As a result of the NBME's most recent accommodation denial, Baer is now faced with the prospect of taking Step 1 for a fourth time without accommodation. If Baer fails to achieve a passing score on this fourth attempt at taking Step 1, then she will be summarily expelled from medical school and her dream of becoming a physician will come to an end.

## COUNT 1: VIOLATION OF THE ADA

54. Baer incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55. Title III of the ADA (46 U.S.C. § 12189) prohibits discrimination against persons with disabilities in professional examinations such as the USMLE.

56. The NBME is covered by the ADA because it administers the USMLE Step 1. *See* 42 U.S.C. § 12189.

57. The ADA requires the NBME to provide reasonable accommodations to individuals suffering from disabilities.

13

58. In particular, the ADA requires that the NBME provide accommodations such as additional time to take the examination, if required to ensure that the examination "accurately reflect[s] the individual's aptitude or achievement level or whatever other factors the examination purports to measure." 28 C.F.R. § 36.309(b).

59. Baer is disabled under the ADA because she suffers a physical or mental impairment that substantially limits one or more of her major life activities. 42 U.S.C. § 12102(2)(A).

60. Baer's particular "impairment" takes the form of AD/HD and various learning disorders that significantly limit her in the "major life activities" of reading and learning. *See* 28 C.F.R. § 36.104(2).

61. The NBME has repeatedly refused to accommodate Baer's disability, despite her compliance with their stringent requirements for requesting accommodations.

62. As a result of the NBME's failure to accommodate Baer, Baer has suffered damage and will continue to suffer irreparable harm. In particular, as a result of the previous denials of accommodations, Baer's medical school completion has been delayed, she has lost valuable internships, her ability to obtain valuable internships and prestigious positions has been damaged, and she has suffered emotional and other harm. In the absence of relief, she faces impending expulsion from medical school and the premature termination of her medical career.

## COUNT II: VIOLATION OF THE MASSACHUSETTS PUBLIC ACCOMMODATIONS STATUTE

63. Baer incorporates by reference paragraphs 1 through 60 as though fully set forth herein.

64. The Massachusetts Public Accommodations Statute prohibits "any distinction, discrimination or restriction on account of . . . any physical or mental disability . . . relative to the admission of any person to, or his treatment in any place of public accommodation." M.G.L. c. 272, § 98.

65. The NBME is a covered public accommodation under M.G.L. c. 272 and, as such, is prohibited from discriminating against individuals based on their known disabilities.

66. The NBME is required to provide accommodations to individuals suffering from physical or mental handicaps.

67. Baer is handicapped under Massachusetts law because she suffers a physical or mental impairment that substantially limits one or more of her major life activities. M.G.L. c. 151B, § 1(17).

68. Baer's particular "impairment" takes the form of AD/HD and various learning disorders that significantly limit her in the "major life activities" of reading and learning. M.G.L. c. 151B, § 1(20).

69. The NBME has repeatedly refused to accommodate Baer's handicap, despite her compliance with their stringent requirements for requesting accommodations.

70. As a result of the NBME's failure to accommodate Baer, Baer has suffered damage and will continue to suffer irreparable harm. In particular, as a result of the previous denials of accommodations, Baer's medical school completion will be delayed, she has lost valuable internships, her ability to obtain valuable internships and prestigious positions has been damaged, and she has suffered emotional and other harm. In the absence of relief, she faces impending expulsion from medical school and the premature termination of her medical career.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff Heidi A. Baer respectfully requests that this Court:

(1) enter judgment in Baer's favor on Counts I - II of the Verified Complaint;

(2) enter a preliminary and permanent injunction:

15

    (a)    directing that the NBME immediate cease and desist from its refusal to provide Baer with a reasonable accommodation on the USMLE Step 1;

    (b)    ordering the NBME to provide Baer with time and ½ in which to take the USMLE Step 1 and all other USMLE exams; and

    (c)    granting Baer such other and further injunctive relief as is fair and just;

(3)    Award Baer compensatory damages;

(4)    Award Baer reasonable attorneys' fees, costs and expenses associated with bringing and prosecuting this litigation; and

(5)    Order such other relief as is fair and just.

## JURY DEMAND

Plaintiff reserves her rights to and hereby requests a trial by jury on all matters so triable.

Respectfully submitted,

**HEIDI A. BAER**

By her attorneys:

_____
Bret A. Cohen, BBO # 637830
Carolyn A. Wiesenhahn, BBO # 641596
James M. Nicholas, BBO # 653892
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000

Dated: April 12, 2005

## VERIFICATION

I, Heidi A. Baer, hereby verify that I have read the foregoing Verified Complaint and Exhibits and am familiar with the contents thereof, and that the allegations contained therein are true and correct to the best of my knowledge except where stated on information and belief, in which event I believe the same, in good faith, to be true.

_Heidi Alexandra Baer April 9, 05_
Heidi Baer                     April 8, 2005

LIT 1514517v1

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Baer, Heidi A.

## DEFENDANTS
National Board of Medical Examiners.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Bret A. Cohen, BBO # 637830
Carolyn A. Wisenhahn, BBO # 641596
James M. Nicholas, BBO # 653892
Mintz, Levin Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center, Boston, MA 02111
617-542-6000

ATTORNEYS (IF KNOWN)
Joseph F. Savage, Jr.
Goodwin Procter, LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF)
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commercial/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 480 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 820 Copyrights | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 830 Patent | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth In Lending | | ☐ 840 Trademark | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 801 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 380 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 881 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 443 Housing/Accommodations | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 540 Mandamus & Other | | ☐ 871 IRS — Third Party 26 USC 7609 | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 550 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This case is brought by Plaintiff pursuant to 28 U.S.C. §1331 for violation of Title III of the Americans with Disabilities Act.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER FR C.P. 23

**DEMAND $** Injunctive Relief

CHECK YES only if demanded in JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE: April 12, 2005
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG JUDGE _____

NITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)  Heidi A. Baer v. National Board of Medical Examiners

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
   - [X] II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases
   - [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.
   - [ ] IV.  220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V.   150, 152, 153.

   05-10724 GAO

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [X]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [X]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [ ]   NO [X]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [XX]   Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [XX]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  James M. Nicholas, Esq.
ADDRESS  Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston
TELEPHONE NO.  (617) 348-1620                                                                    MA 02111

(CategoryForm.wpd - 2/15/05)