IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEIDI A. BAER, ) | CIVIL ACTION NO. _____ |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM IN SUPPORT OF** |
| ) | **PLAINTIFF'S MOTION FOR A** |
| NATIONAL BOARD OF MEDICAL ) | **PERMANENT AND PRELIMINARY** |
| EXAMINERS, ) | **INJUNCTION** |
| Defendant. ) | |

**05 - 10724 GAO**

## INTRODUCTION

Plaintiff Heidi A. Baer suffers from multiple learning and reading disorders, conditions that substantially limit Ms. Baer in the major life activities of learning and reading. These disorders significantly inhibit Ms. Baer's ability to read and react to the written word, which requires her to take substantially more time to read and process information. Because Ms. Baer's learning disorders substantially impair her performance in the major life activities of reading and learning, these disorders constitute a disability entitled to protection under federal and state law.

Ms. Baer needs extra time to take the USMLE in order for the exam to actually test her knowledge of the material rather than her disability. She has requested accommodations from the National Board of Medical Examiners ("NBME" or "Defendant"), the organization tasked with administering the USMLE, on four different occasions. Despite reports from multiple doctors and other assessment specialists concluding that Ms. Baer has a learning disability and ADHD, the NBME has repeatedly rejected Ms. Baer's application for an accommodation. Each time, Ms. Baer failed the exam. Moreover, if Ms. Baer is to take the exam without accommodation and fail again, she will be expelled from medical school and her lifelong dream of becoming a doctor will come to an end.

To ensure that this dream does not die unnecessarily, Ms. Baer now seeks this Court's order that NBME provide her with a reasonable accommodation to which she is entitled to allow her to take the USMLE on an equal footing with those of her peers who are not afflicted with the same learning and reading disabilities. Ms. Baer respectfully submits that permanent and preliminary injunctive relief are required to preserve her rights under federal and state law and asks that this Court require Defendant to reasonably accommodate her disability by providing her with time and one-half to take each step of the USMLE.

## FACTUAL BACKGROUND

Ms. Baer is an accomplished third year medical student at Drexel University College of Medicine ("Drexel") located in Philadelphia, PA.[1] In order for Ms. Baer to obtain her medical licensure, she is required to pass three separate phases of the USMLE, commonly referred to as Steps 1, 2 and 3.[2] Ms. Baer is currently preparing to take Step 1 of the USMLE - the initial phase of examinations - on May 5, 2005.[3]

Ms. Baer suffers from reading and learning disabilities and ADHD, which substantially limit her ability to read and comprehend and process written material as quickly as other people.[4] In Ms. Baer's Verified Complaint, she has set forth in detail the history of her disability, the accommodations she has received over time from other sources, such as the MCAT and her various schools, and her rebuffed attempts to obtain the same necessary accommodations from the NBME. What follows here is a brief recitation of the facts for the Court's convenience.

---

[1]    Verified Complaint ("Compl.") at ¶2.
[2]    Id.
[3]    Id.
[4]    Id. at ¶11.

2

## I.     BAER'S PAST HISTORY OF LEARNING DISORDERS.

### A.     Childhood.

Despite possessing an overall IQ in the 99th percentile, Ms. Baer has continually struggled with her learning disabilities since childhood, and, yet, has persevered to the point where she is now on the verge of becoming a physician.[5] Throughout her middle and high school education at Milton Academy in Milton, Massachusetts, Ms. Baer received extra time to take tests after several teachers noted that she had difficulty digesting written information.[6] Indeed, one of Ms. Baer's teachers characterized her as having had "difficulty processing information quickly and [needing] extra time to complete quizzes."[7] In addition to being given extra time to complete exams, Ms. Baer employed several other mechanisms to cope with her learning disabilities, including obtaining significant private tutorial assistance, spending substantial time improving organizational skills, and working extensively with her parents to complete homework assignments and other projects.[8]

### B.     Undergraduate Work.

Following her graduation from Milton Academy, Ms. Baer attended Duke University where her difficulties on timed examinations continued.[9] For example, Ms. Baer's desire to attend medical school after graduation required her to take a number of math and science classes in which her knowledge of course material was assessed by her performance on timed, multiple-choice examinations.[10] To manage her disability on these exams, Ms. Baer obtained substantial tutorial assistance and spent countless hours practicing for these exams by taking previously given versions of the tests.[11] Nevertheless, as her college transcript demonstrates, Ms. Baer's performance in these classes was inferior as compared to her

---

[5]     Verified Complaint ("Compl.") at ¶12.
[6]     Id. at ¶15.
[7]     Id. at ¶14.
[8]     Id. at ¶17.
[9]     Id. at ¶18.
[10]     Id.
[11]     Id.

performance in classes that did not require timed examinations.[12]  Indeed, her overall success in college can be attributed to her decision to major in English -- an area of study not typically subject to strictly timed tests.[13]

### C.    Medical School Admittance Exam.

During her final year at Duke, Ms. Baer began to prepare for the Medical College Admission Test ("MCAT"), a required element of admission for all prospective students seeking matriculation into medical school.  Ms. Baer enrolled in a "Princeton Review Course," designed to help prepare students for the MCAT by offering and administering full-length, timed practice exams and through instruction on various test-taking strategies and techniques.[14]  After completing the review course, Ms. Baer sat for the August 1995 administration of the MCAT.[15]  She was unable, however, to complete any of the four sections on the MCAT in the time allotted, and only achieved a score of 19 -- well below the national average and patently insufficient for admission into any reputable medical school.[16]

After her graduation from Duke, and as a result of her poor results on the August 1995 MCAT, Ms. Baer enrolled in the Harvard University Extension School, where she spent the next two years re-taking all of the basic science courses that are tested on the MCAT.[17]  In August of 1997, Ms. Baer again sat for the MCAT and was unable to complete the exam within the allotted time, and again her score (20) was well below average.[18]

At this point, Ms. Baer realized that the difficulties she was having with the MCAT were not for lack of trying or failure to understand and comprehend the source material.  Rather, she simply could not read and process the exam questions fast enough to complete the test.[19]  As a result, in October 1998,

---

[12]    Id.
[13]    Id.
[14]    Id. at ¶19.
[15]    Id. at ¶20.
[16]    Id.
[17]    Furthermore, Ms. Baer enrolled in yet another MCAT test preparation program, this one offered by Kaplan.  Id. at ¶21.
[18]    Id. at ¶22.
[19]    Id. at ¶23.

Ms. Baer met with Dr. Christopher Connolly, a psychologist, who diagnosed her with dyslexia.[20] In reaching this diagnosis, Dr. Connelly administered a formal intellectual assessment diagnostic on Ms. Baer and made the following conclusions:

> [Ms. Baer] had superb verbal intelligence as well as nonverbal intelligence. In her academic testing, she showed strengths in her written language and math. In her reading, work recognition was well developed but <u>reading rate was quite slow and significantly reduced for a college graduate of her level of intelligence.</u> (Emphasis added).[21]

Based on Dr. Connolly's diagnosis and his recommendation that she be afforded additional time to complete timed examinations, Ms. Baer applied to the Association of Medical Colleges (the "AMC"), the group who administers the MCAT, for a time extension accommodation on the exam.[22] The AMC granted Ms. Baer's accommodation request and provided her with time and one-half within which to complete the November 1999 administration of the MCAT.[23] Armed with this additional time, Ms. Baer completed the entire exam and her MCAT score skyrocketed from a 20 to a 28, good enough to gain admittance into Drexel College of Medicine.[24]

### D.    Medical School.

At Drexel, Ms. Baer's learning disability continued to have an adverse impact on her academics, as she struggled to complete timed, multiple-choice examinations, despite a strong understanding of the underlying material.[25] Indeed, Ms. Baer's inability to complete her examinations forced her to withdraw from several of her required first-year medical school classes, and resulted in her having to take an additional year to complete her first-year studies.[26] Ultimately, and at the behest of several medical school advisors and professors, Ms. Baer requested and received additional time on

---

[20]       *Id.* at ¶24.
[21]       Based on the Wechsler Adult Intelligence Scale, Ms. Baer was tested has having a Verbal IQ in the 99th percentile, a Performance IQ in the 95th percentile and a Full Scale IQ in the 99th percentile; however, her overall reading comprehension as measured by the Nelson Denny Reading Test was only in the 23rd percentile. *Id.*
[22]       *Id.* at ¶25.
[23]       *Id.*
[24]       *Id.* at ¶26.
[25]       *Id.*
[26]       *Id.*

her exams as a reasonable accommodation to assist her in managing her learning disability.[27] Since accepting the accommodation, Ms. Baer's academic standing has improved dramatically, as evidenced by her second academic year grades in which she honored one course (Pathology and Lab Medicine) and high-passed three others (Bioethics, Introduction to Clinical Medicine and Psychopathology).[28]

## III.    USMLE STEP I EXAM AND REQUESTS FOR ACCOMMODATION.

Drexel College of Medicine requires that before continuing with the third year of medical school clerkships, students take the USMLE Step 1.[29] Performance on the USMLE Step 1, in addition to being a prerequisite to continuing medical studies, is a primary factor used to determine where a candidate may qualify and be accepted for residency training.

In March 2003, Ms. Baer took a practice version of the Step 1 exam administered by Drexel, and was allotted time and one-half within which to complete the test.[30] Ms. Baer achieved a score of 60.[31] Subsequently, in May 2003, Ms. Baer took a second practice test, this time without the additional time accommodation, and fared much worse, scoring only a 52 on the exam.[32]

Nevertheless, Ms Baer applied to take the June 28, 2003 administration of the USMLE Step 1. As a result of her poor showing on the May practice exam, Ms. Baer submitted a request to Defendant for a reasonable accommodation based on her documented learning disability.[33] In support of her request, Ms. Baer presented Defendant with the Connolly Report and a Psychological Evaluation generated by Ms. Danielle Kerns and Dr. Evan Forman (the "Kerns/Forman Report"), in which she was diagnosed has having a reading disorder.[34]

---

[27]    *Id.* at ¶27.
[28]    *Id.*
[29]    *Id.* at ¶29.
[30]    *Id.* at ¶30.
[31]    On the March 2003 practice exam, a score of 64 was considered passing. *Id.*
[32]    Students generally perform better on the second practice exam, after their academic courses have concluded and after having spent considerable time studying for their comprehensive final exams. *Id.* at ¶31. On the May 2003 practice exam, a score of 64 was considered passing. *Id.*
[33]    *Id.* at ¶32.
[34]    *Id.*

On June 11, *without any independent interview, evaluation or testing of her learning disability,* Defendant denied Ms. Baer's request for accommodation as insufficient.[35] Defendant simply dismissed the evaluations and diagnosis contained in both the Connolly and Kerns/Forman Reports, noting that the reports were "incomplete and non-comprehensive" and referring to Ms. Baer's average performance on certain diagnostic tests as reflective of her lack of disability.[36] As a result, on June 28, 2003, Ms. Baer sat for the USMLE Step 1, without accommodation, and failed with a score of 167.[37]

In October 2003, Ms. Baer again petitioned Defendant for an accommodation to take the December 2003 administration of the Step 1, and submitted the evaluations of additional doctors in support of her request.[38] In November 2003, Defendant denied Ms. Baer's request, this time irrelevantly objecting to the failure of Ms. Baer's doctors to assign her with a DSM-IV diagnosis, and again referring to her average performance on certain diagnostic evaluations as being the true measure of her abilities.[39] Consequently, Ms. Baer was forced to take Step 1 without accommodation for a second time on December 19, 2003.[40] As expected, Ms. Baer failed the exam, this time with a score of 176.[41]

Ms. Baer repeated this process in the summer of 2004: she petitioned Defendant for an accommodation, her petition was rejected, and she took the Step 1 exam and failed to achieve a passing score.[42]

## III.    THE WEINSTEIN REPORT AND BAER'S MOST RECENT ACCOMMODATION REQUEST.

In late-October and early-November, 2004, Ms. Baer submitted to a neuropsychological evaluation by Dr. Cheryl Weinstein, Ph.D., a well-respected expert in the field of neuropsychological studies.[43] Dr.

---

[35]    *Id.* at ¶33.
[36]    *Id.*
[37]    For the June 2003 administration of the USMLE Step 1, a score of 184 was considered passing. *Id.*
[38]    *Id.* at ¶34.
[39]    *Id.* at ¶37.
[40]    *Id.* at ¶38.
[41]    For the December 2003 administration of the USMLE Step 1, a score of 182 was considered passing. *Id.*
[42]    For the August 2004 administration of the USMLE Step 1, a score of 182 was considered passing.
*Id.* at ¶42. In sum, Ms. Baer has taken the Step 1 exam without accommodation on three separate occasions, and in each instance she has failed to attain the required passing score. Compl. at ¶¶33, 38, 42.

Weinstein personally performed a battery of diagnostic tests on Ms. Baer, and was able to examine Ms. Baer's difficulties first hand.[44] The results of the diagnostic tests performed by Dr. Weinstein demonstrate that Ms. Baer suffers from severe language based and reading disorders that affect her ability to perform on timed examinations:

> Extended time on timed tests is in order given Ms. Baer's longstanding history of slowed reading and her history of accommodations. . . . This recommendation is also based on her slowed reading rate on the Nelson Denny Reading Test-Form G (3[rd] Percentile Rank) and her slowed reading fluency on the Woodcock-Johnson Test of Achievement-III (Reading Fluency: 13th Percentile Rank; Sound Blending: 22[nd] Percentile Rank; Woodcock-Johnson Diagnostic Reading Battery: 22[nd] Percentile Rank when compared with individuals of comparable age.[45]

Based on these test results, Dr. Weinstein found that Ms. Baer does in fact have a language-based learning and reading disorder that substantially limits her ability to read and react to the written word as compared to most people.[46] Additionally, Dr. Weinstein specifically concluded that:

> While [Ms. Baer's] intellect is well above average to superior and while she has very strong reasoning abilities, it is clear that a learning impairment that substantially limits her ability to read rapidly, to organize information and rapidly plan how to proceed is present and represents a deficit when compared to the general population. . . . Moreover, her problems rapidly retrieving language make it harder for her to learn and quickly demonstrate what she knows.[47]

Finally, Dr. Weinstein assessed whether Ms. Baer was malingering. By personally administering the tests, Dr. Weinstein was able to conclude that in fact Ms. Baer was not

---

[43]     Ms. Baer also has provided Defendant with a Neuro/Psychoeducational Report prepared by Dr. Marilyn F. Engelman, Ph.D, a prominent expert in diagnosing learning disorders. *Id.* at ¶39. Dr. Engelman administered and/or analyzed Ms. Baer's results on a wide range of tests, including the Wechsler Adult Intelligence Scale - Third Edition, the Wechsler Abbreviated Scale of Intelligence and the Woodcock-Johnson Psycho-Educational Battery. *Id.* at ¶40. Each of these tests is specifically approved by Defendant to assess learning disabilities. *Id.* Based on these test results and Dr. Engelman's evaluations, Ms. Baer was diagnosed as having the following impairments: (1) a reading disorder, DSM-IV 315.00; (2) a learning disorder, not otherwise specified, DSM-IV 315.9; (3) Attention Deficit, Hyperactivity Disorder ("AD/HD"), Inattentive Type, DSM-IV 314.00; and (4) learning disabilities in the areas of executive functioning, visual associative skills, auditory attention, and cognitive fluency. *Id.* at ¶41.
[44]     *Id.* at ¶44.
[45]     *Id.* at ¶45.
[46]     *Id.* at ¶¶44, 48.
[47]     *Id.* at ¶46.

malingering.[48]  Instead, Dr. Weinstein found that "Ms. Baer works so hard to succeed *but* her

inefficient style and slowed processing ultimately interferes with her ability to read and write

efficiently."[49]  As such, Ms. Baer's difficulties on timed exams derive not from any indolence on her

part, but rather from a learning disability that has afflicted her since childhood.[50]

As to the ultimate issue of Ms. Baer's ability to perform on timed examinations such as the

USMLE Step 1, Dr. Weinstein specifically concluded that "without [an accommodation of

additional time a] timed test [will continue to assess] her speed in answering a question rather than

her knowledge of medical material."[51]

On November 24, 2004, Ms. Baer provided Defendant with a copy of the Weinstein Report, along

with a personal statement, scholastic evaluations from Milton Academy, diagnostic evaluations from three

other doctors supporting the fact that she suffers from a disability, and her college and medical school

transcripts, as evidence of her learning disabilities and entitlement to an accommodation under the ADA.[52]

Defendant again refused to accommodate Ms. Baer's disability, and characterized various elements of Ms. Baer's

supporting documentation as insufficient.[53]  For example, Defendant dismissed Ms. Baer's low test scores on

certain diagnostic tests because such scores were "raw" rather than "scaled," and thus "not readily

interpretable."[54]  Moreover, Defendant ignored Dr. Engelman's diagnosis of Ms. Baer's AD/HD, stating that

there was insufficient evidence that she suffered from the disorder either currently or during childhood.[55]

Finally, Defendant again referred to certain diagnostic test results where Ms. Baer scored in the average test

range as being indicative of her true reading and learning capabilities, while casually dismissing those test scores

---

[48]     *Id.* at ¶47.
[49]     *Id.* at ¶49.
[50]     In addition, Dr. Weinstein fully explored Ms. Baer's childhood and family history for evidence of a disability.  As explained in detail in her report, Dr. Weinstein noted that Ms. Baer's childhood is replete with situations where Ms. Baer's disability impeded her success.  Moreover, Dr. Weinstein confirmed that both of Ms. Baer's parents and a brother all suffer from reading and/or learning impairments.  *Id.* at ¶47.
[51]     *Id.* at ¶50.
[52]     *Id.* at ¶51.
[53]     *Id.* at ¶52.
[54]     *Id.*
[55]     *Id.*

indicating that Ms. Baer is, in fact, learning disabled.[56]  As a result of Defendant's most recent accommodation denial, Ms. Baer is now faced with the prospect of taking Step 1 for a fourth time without accommodation.

Ms. Baer's situation is further exacerbated by the fact that her medical school generally expels students who cannot pass Step 1 after three attempts.[57]  Indeed, Ms Baer has had to petition the administration at Drexel for permission to take Step 1 a fourth time.[58]  Should she fail to achieve a passing score on the May 2005 administration of the USMLE Step 1, Ms. Baer will be expelled from medical school and her career in medicine will be over.

## ARGUMENT AND AUTHORITIES

By her motion, Ms. Baer seeks a preliminary and permanent injunction requiring Defendant to provide her with a reasonable accommodation of additional time within which to complete each phase of the USMLE, beginning with Step 1.  Under Massachusetts law, and in the First Circuit, it is well-settled that injunctive relief is warranted where, as here, the moving party shows:  (1) a reasonable likelihood of success on the merits; (2) a substantial risk of irreparable harm if the injunction is not granted; (3) the harm it will suffer if the injunction is denied outweighs the injury the non-moving party will suffer if the injunction is granted; and (4) granting the injunction will not adversely affect the public interest.  *TEC Engineering Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 544 (1st Cir. 1996); *Packaging Indus. Group, Inc. v. Cheney*, 380 Mass. 609, 616-17 (1980).  As set forth below, Ms. Baer satisfies these criteria in the case at bar.

In general, the role of injunctive relief is to prevent a future harmful act and preserve the court's ability to render a meaningful decision on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Itek Corp. v. First National Bank of Boston*, 566 F.Supp. 1210, 1215 (D. Mass. 1983); *United Parcel Service, Inc. v. Local 25 of the International Brotherhood of Teamsters*, 421 F.Supp. 452, 459 (D.

---

[56]     *Id.*
[57]     *Id.* at ¶3.
[58]     *Id.*

Mass. 1976)("The sole function of injunctive relief, whether temporary or permanent, is to forestall future violations.").[59] Preventing an ongoing violation of the ADA and the Massachusetts Public Accommodations Statute and granting the protections authorized and guaranteed by these statutes is clearly within the realm of appropriate injunctive relief. *See* 42 U.S.C. § 12188(a).

## I.   MS. BAER WILL LIKELY SUCCEED ON THE MERITS OF HER CLAIMS.

### A.   Ms. Baer Learning Disability Is Protected Under Federal and State Law.[60]

#### 1.   Disability Discrimination Is Prohibited On Professional Exams.

Title III of the ADA prohibits discrimination against persons with disabilities in professional examinations and requires that such examinations be administered in a manner that is accessible to persons with such disabilities. 42 U.S.C. § 12189. The Department of Justice ("DOJ") regulations interpreting Title III of the ADA require that examinations covered by 42 U.S.C. § 12189 be selected and administered in a manner that accurately measures the individual test-taker's aptitude or achievement level rather than reflecting the individual's specific impairment. 28 C.F.R. § 36.309(b)(1)(i) states in pertinent part that:

> an examination covered by [42 U.S.C. § 12189] must assure that (i) the examination is selected and administered so as to best insure that, when the examination is administered to an individual with a

---

[59]     Furthermore, the ADA was specifically enacted in part, to provide "a clear and comprehensive national mandate for the elimination of discrimination . . . and to provide clear, strong, consistent, enforceable standards addressing discrimination . . ." 42 U.S.C. § 12101(b)(1) and (2). In particular, the ADA states that:

> Any person that offers examinations or courses related to applications, licensing, or credentialing for secondary and post secondary education, professional, or trade purposes shall offer such examination or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals. 42 U.S.C. § 12189.

The ADA specifically includes the remedies set forth in 42 U.S.C. § 2000a-3(a) for any violation of § 12189, including preliminary and permanent injunctive relief. *See* 42 U.S.C. § 12188(1)(a). In addition, 2000a-3(a) specifically provides that temporary or permanent injunctive relief is available as a remedy to aggrieved individuals and to prevent further violations of law. 42 U.S.C. § 2000a-3(a).

[60]     Ms. Baer's disabilities are protected under both the ADA and the Massachusetts Public Accommodations Statute, which prohibits "any distinction, discrimination or restriction on account of . . . any physical or mental disability . . . relative to the admission of any person to, or his treatment in any place of public accommodation." M.G.L. c. 272, § 98. Since the interpretation of the Massachusetts Public Accommodations Statute proceeds "hand in hand" with the interpretation of the ADA, the presence of an ADA violation necessitates a concomitant finding that the Massachusetts Public Accommodations Statute has been violated. *See Lesley v. Chie*, 81 F.Supp.2d 217, 226 (D. Mass. 2000); *see also Kuketz v. Petronelli*, 443 Mass. 355, 360 n. 19 (2005).

> disability that impairs sensory, manual, or speaking skills, the
> examination results accurately reflect the individual's aptitude or
> achievement level or whatever other factor the examination purports
> to measure, rather than reflecting the individual's impaired sensory,
> manual, or speaking skills (except where those skills are the factors
> that the examination purports to measure).

The USMLE Step 1 is exactly the type of exam that the DOL regulations were designed to govern.

An entity subject to 42 U.S.C. § 12189 illegally discriminates against a disabled individual when it fails to make a reasonable accommodation for a known physical or mental impairment. 42 U.S.C. §12112(b)(5)(A). The regulations promulgated under Title III also specifically state that changes in the length of time permitted for completing an examination may be an appropriate accommodation. 28 C.F.R. § 36.309(b)(2).

Here, Defendant administers the USMLE as a nationwide examination for prospective physicians, which must be successfully completed to obtain a medical license in the United States. Accordingly, Defendant is a covered entity and is required to comply with the provisions of Title III and the Massachusetts Public Accommodations Statute. *See Rush v. National Board of Medical Examiners*, 268 F.Supp.2d 673, 678 (N.D. Tex. 2003); *Gonzalez v. National Bd. of Medical Examiners*, 225 F.3d 620, 626 (6th Cir. 2000); *Lesley v. Chie*, 81 F. Supp. 2d 217, 226 (D. Mass. 2000). As such, Defendant must reasonably accommodate the known disabilities of individuals taking the USMLE, including the provision of additional time where appropriate. Thus, when determining the likelihood of success on the merits, the sole issue is whether Ms. Baer has a disability protected under the ADA and Massachusetts Public Accommodations Statute that justifies her requested accommodation.

For purposes of the ADA and Massachusetts Public Accommodations Statute, a person is disabled if he or she suffers from a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A); M.G.L. c. 151B, § 1(17). Although neither law specifically defines all of the terms used in the definition of disability, the DOJ, which has authority to implement regulations under Title III of the ADA, has concluded

12

that a "physical or mental impairment" includes "specific learning disabilities." 28 C.F.R. § 36.104.

These regulations further state that a "major life activity" includes "walking, seeing, hearing, speaking, breathing, learning and working." *Id.* §36.104(2)(emphasis added); *see also* M.G.L. c. 151B, § 1(20). In interpreting the regulations, several courts have concluded that the major life activity of learning includes reading and writing. *See Rush*, 268 F. Supp. 2d at 678; *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d, 141, 155 (1st Cir. 1998); *Bartlett v. New York State Board of Law Examiners,* 226 F.3d 69, 80 (2nd Cir. 2000).

## 2.    Ms. Baer Suffers From A Disability Protected By Federal and State Law.

In order for a plaintiff to avail herself of the ADA's and Massachusetts Public Accommodations Statute's protections, she must establish that she suffers from a disability which "substantially limits" her ability to read and learn. *Rush*, 268 F. Supp. 2d at 678. Although the DOJ regulations do not define the phrase "substantially limits," courts have relied on the preamble to the DOJ regulations when interpreting the phrase. *Id.*; *Bartlett*, 226 F. 3d at 80. According to the preamble, "[a] person is considered an individual with a disability. . .when the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people." 27 C.F.R. Pt. 35, App. A § 35.104.

As stated more fully above, Ms. Baer clearly suffers from an impairment -- namely a reading disorder -- that substantially limits her major life activities of learning and reading. To measure the breadth and scope of Ms. Baer's disability, Dr. Weinstein subjected her to several diagnostic tests, including the Woodcock-Johnson III Test of Achievement and the Nelson Denny Reading Test (under timed conditions).[61] The diagnostic results indicate that Ms. Baer suffers from a slowed reading rate and slowed reading fluency, and that her abilities in these areas are far inferior to those same abilities found in other people her age in the general population.[62]

---

[61]    Weinstein Report at pp. 7, 8.
[62]    Weinstein Report, at p. 7.

On the Nelson Denny Reading Test, which evaluates reading speed, Ms Baer scored in the 3rd percentile rank when compared with other individual's in the general population.[63] Similarly, on the Woodcock-Johnson Test, which tests reading fluency, Ms. Baer scored in the 13th percentile rank when compared with other individuals in the general population.[64]

The results of the diagnostic tests performed on Ms. Baer demonstrate, in and of themselves, that she suffers from a disability entitled to accommodation by Defendant pursuant to the ADA and Massachusetts Public Accommodations Statute. *See Rush*, 268 F. Supp. 2d at 678 (concluding that the plaintiff's learning disability entitled him to a time-extension accommodation on the USMLE Step 1 where the plaintiff's below average scores on the Woodcock-Johnson test demonstrated that he was substantially limited in the major life activities of reading and learning).

Dr. Weinstein, however, did not rely solely on dry test data to determine that Ms. Baer suffers from language-based learning disabilities. She also analyzed Ms. Baer's long history of learning difficulties and her family's history of learning disabilities.[65] Dr. Weinstein found that Ms. Baer had identifiable learning problems dating back to the fourth and fifth grades.[66] As noted above, these difficulties continued to plague Ms. Baer as she progressed through high school, college and medical school. The impact of her disability has forced Ms. Baer to seek a variety of accommodations through the years - from self-accommodating her disability in college through choice of a major (English) where timed-tests where not used to measure ability and knowledge of source material, to more formal accommodations in medical school, including Drexel's decision to permit Ms. Baer time and one-half to complete her medical school exams.

---

[63]     *Id.*

[64]     Moreover, Ms. Baer's oral vocabulary skills and listening comprehension (18th percentile rank) are far below what one would find in individuals in the general population. These scores plummet even further when compared to individuals sharing a comparable education (19th percentile rank and 2nd percentile rank, respectively). *Id.* at p. 8.

[65]     *Id.* at pp. 1-3, 6 and 7.

[66]     *Id.* at p. 7.

Furthermore, Ms. Baer's experience taking the MCAT supports Dr. Weinstein's conclusions regarding the nature of Ms. Baer's learning disability. Three times Ms. Baer sat for the MCAT without any accommodation, and received scores of 19 and 20, both of which were far too low to qualify Ms. Baer for admittance into most accredited medical schools. After being provided a reasonable accommodation for her disability in the form of additional time, Ms. Baer retook the MCAT and achieved a score of 28. The significance of Ms. Baer's past success on timed examinations after having been afforded a reasonable accommodation for her learning disability cannot be understated, and it further illustrates the need for a similar accommodation on the USMLE. *See Rush*, 268 F. Supp. 2d at 675, 678 (time-extension accommodation on USMLE Step 1 appropriate in light of plaintiff's history of similar accommodation on MCAT examination).

Ms. Baer's performance on diagnostic tests, coupled with her history of reading difficulties, establishes that, as compared to most people, Ms. Baer is restricted as to the conditions, manner and duration under which she can perform the skills related to reading. As such, she has a disability that substantially limits a major life activity and is entitled to reasonable accommodation in accordance with Title III of the ADA and the Massachusetts Public Accommodations Statute.[67] Moreover, as her past history of accommodations indicate, when permitted additional time within which to completed timed examinations, Ms. Baer has been able to manage her disability and perform on a level commensurate with her non-disabled peers. Title III was designed to effectuate such a result, and its application here is appropriate.

---

[67]    In determining that Ms. Baer does not suffer from a learning disability, Defendant has relied heavily on certain "deficiencies" in each of Ms. Baer's formal requests for accommodation. For example, Defendant has (i) relied on certain diagnostic test scores in which Ms. Baer scored in the average range as proof that Ms. Baer is not learning disabled; (ii) noted the failure on the part of Ms. Baer's doctors to assign her with a DSM-IV diagnosis.; and (iii) questioned evidence that Ms. Baer's learning disability originated in childhood. The ADA and Massachusetts Public Accommodations Statute do not require Ms. Baer to comply with Defendant's unreasonable and illegal standards of what constitutes a disability. Rather, Ms. Baer need only show that she suffers from a disability which substantially limits her in the major life activities of reading and learning.

### B.    The Applicable Standard For Success On The Merits.

To establish a likelihood of success on the merits, the plaintiff "need not demonstrate that there is no chance that she will lose." *In re Aerovox , Inc. v. Parallax Power Components*, LLC, 281 B.R.D. 419, 433 (Bankr. D. Mass. 2002). Rather, the plaintiff must only raise serious questions going to the merits of the case sufficient to make them a "fair ground for litigation." *Shammas v. Merchants National Bank*, 1990 WL 354452 * 2 (D. Mass. 1990); *Jaffe v. Sharp*, 463 F. Supp. 222, 229-230 (D. Mass. 1978). When weighing whether the plaintiff has met her burden, a court may implement a "sliding scale" analysis, taking into account other elements of the *prima facie* case. *In re Aerovox, Inc.*, 281 B.R.D. at 433. In particular, where a plaintiff has established that she will suffer significant irreparable harm should an injunction not issue, less emphasis need be placed on the likely success of her case. *Id.*; *Marshall v. R.S. Means Company, Inc.*, 940 F. Supp. 39, 42 (D. Mass. 1996)("where likelihood is very strong that the moving party will suffer great irreparable harm, some leniency may be applied to the assessment of the likelihood of success on the merits.").

Here, a denial of Ms. Baer's requested injunctive relief will most assuredly result in her suffering significant irreparable harm. In fact, if Defendant is not required to comply with the ADA and the Massachusetts Public Accommodations Statute and provide Ms. Baer with a reasonable accommodation for her learning disability, she will, in all probability, fail to achieve a passing score on the May administration of the USMLE Step 1. As a result, Drexel will remove her from the rolls of medical school and her goal of becoming a licensed physician will end. To Ms. Baer, there can be no greater irreparable injury than her expulsion from medical school and the premature termination of her medical career.

Given the significance of this irreparable harm, Ms. Baer's burden with respect to the likelihood of success on the merits prong of the prima facie case is lessened. Accordingly, Ms. Baer need only show some likelihood of success by raising serious and doubtful questions that create a fair ground for litigation. Ms. Baer clearly meets this burden. In fact, Ms. Baer has undeniably demonstrated that she suffers from learning disabilities that preclude her from engaging in the major life activities of learning and reading in the same

16

manner as compared to most people. Under Title III of the ADA and the Massachusetts Public

Accommodations Statute, Ms. Baer cannot be discriminated against based on these disabilities, and

Defendant must be required to provide her with a reasonable accommodation of additional time on the

USMLE. As such, Ms. Baer is entitled to the equitable relief sought herein.

## II.    MS. BAER WILL SUFFER IRREPARABLE HARM IF AN INJUNCTION IS NOT ISSUED.[68]

Where an individual suffers a substantial injury that is not adequately compensable by money

damages, "irreparable harm is a natural sequel." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F. 3d 12,

19 (1st Cir. 1996). Here, Drexel does not generally allow students to take the USMLE Step 1 more than

three times. If, after the third offering, the student is unable to pass the Step 1 exam, he or she is

expelled from medical school. Ms. Baer has already subjected herself to three offerings of the Step 1,

without any accommodation for her disability, and has failed to achieve a passing score. As a result, she

has been forced to seek permission from Drexel to take the exam a fourth time. If she does not pass the

exam in May, she will be expelled from medical school and her career in medicine will be over. As

indicated by her past performance on the exam, Ms. Baer will be unlikely to overcome her disability and

pass the Step 1 exam unless she receives a time-extension accommodation.

Judge Robinson's cogent analysis in *Rush* accurately illustrates the harm that befalls individuals

suffering from learning disabilities, like Ms. Baer, when they are forced to take the USMLE Step 1

without accommodation. As stated by the court:

> The ability to rapidly read the English language, efficiently mentally
> process the medical test questions and the set of possible answers, and
> rapidly comprehend or understand the written test materials is essential
> to displaying one's mastery of the subjects tested by the [USMLE Step
> 1].

*Id.* at 676

---

[68]    The ADA specifically states that one available remedy for redressing ADA violations is injunctive relief. 42 U.S.C. § 12188. By specifically providing a statutory cause of action for injunctive relief for violations of the ADA, it is not necessary for Rush to establish irreparable harm. *See US. v. White*, 893 F. Supp. 1423 (C.D. Cal. 1995). Nevertheless, Ms. Baer will be irreparably harmed if her preliminary injunction is denied.

Given the nature of the exam and the effect of the time constraints, the court found that "decreasing the time needed to take a mastery test such as the USMLE by, for example, refusing a time accommodation for a person [with a learning disability] is tantamount to increasing the difficulty of [the test itself]." *Id.* at 677. A denial of such an accommodation to an individual with a learning disability, therefore, results in an "exam that does not test the person's mastery of the subject matter but instead tests the level of [their] disability." Thus, a time-extension accommodation serves as a way to equalize "test demands and ensure that [the individual] has a fair chance to display [their] mastery. . .of the required medical materials." *Id.*

Defendant's decision to deny Ms. Baer her requested accommodation places her at a distinct disadvantage, as compared to most people, and certainly her peers taking the exam. To deny Ms. Baer her requested accommodation would present her with an uneven playing field as she prepares to take the USMLE Step 1 for a fourth time, and her performance on the test will not be a full and complete measure of her abilities. Instead, the exam will continue to measure her ability to manage her disability, rather than her substantive knowledge of the material tested. *Rush*, 268 F. Supp. 2d at 677. The result is most likely a fourth failing score. The consequence of another failing score is expulsion from medical school.

The significance of denying Ms. Baer's reasonable accommodation deftly illustrates the need for injunctive relief in this case. There is simply no adequate remedy at law if Ms. Baer is denied her right to a reasonable accommodation. A fourth failure will result in her dismissal from medical school, and no future judicial remedy or amount of money will be able to adequately redress her injuries or undo the consequences if this event is to occur. *Sierra Club v. Larson*, 769 F. Supp. 420, 422 (D. Mass. 1991) ("Irreparable injury is that injury for which money damages are not adequate compensation."). Indeed, the only remedy that will sufficiently protect Ms. Baer's rights under Title III of the ADA and the Massachusetts Public Accommodations Statute is injunctive relief.

## III.    THE BALANCE OF EQUITIES FAVORS THE ISSUANCE OF AN INJUNCTION.

A denial of the preliminary injunction will produce a potentially devastating injury to Ms. Baer. As a result of Defendant's refusal to provide the reasonable time-extension accommodation required by the ADA, Ms. Baer will likely fail to achieve a passing score on her fourth attempt at the Step 1 exam. In turn, Drexel will most assuredly effectuate her expulsion from school. If this occurs, Ms. Baer will be deprived of her one opportunity to become a physician. The potential hardship to Ms. Baer, therefore, is substantial and, as noted above, will result in an irreparable injury to her.

Defendant, however, will suffer little if any hardship from the issuance of an injunction. Defendant simply administers a nationwide test to all medical students aspiring to become licensed physicians. It has provided accommodations to test participants in the past and providing an accommodation to Ms. Baer in this instance would do nothing to diminish Defendant's ability to administer tests as it always has to future students. In sum, an injunction has no significant impact on the Defendant or its ongoing operations. Accordingly, the balance of equities and hardships weighs heavily in Ms. Baer's favor. *See Rush*, 268 F.Supp.2d at 673.

## IV.    THE ISSUANCE OF AN INJUNCTION WILL NOT ADVERSELY AFFECT THE PUBLIC INTEREST.

To prevail on her motion for preliminary injunction, Ms Baer must establish that the requested relief will not adversely affect the public interest. *TEC Engineering Corp.*, 82 F.3d at 544. In fact, the clear legislative mandate behind the enactment of the ADA indicates that it is in the public's interest to prohibit discrimination by public entities that offer licensing examinations, such as Defendant, and to require them to provide reasonable accommodations to individuals with learning disabilities. *See* 42 U.S.C. § 12101(b)(1) and (2); *see also Rush*, 268 F.Supp.2d at 679. Accordingly, the public interest is served by requiring those who refuse to provide accommodations to disabled individuals to comply with the strict mandates of the ADA and the Massachusetts Public Accommodations Statute.

## CONCLUSION

**WHEREFORE,** based upon the foregoing, Plaintiff Heidi A. Baer respectfully requests this

Court to enter an order in the form of the accompanying Proposed Order attached hereto as *Exhibit*

*1*, which requires the National Board of Medical Examiners to provide Ms. Baer with time and one-

half to take Steps 1, 2 and 3 of the USMLE.

Respectfully Submitted,

**HEIDI A. BAER**

By her attorneys,

Bret A. Cohen, BBO #637830
Carolyn A. Wiesenhahn, BBO #641596
James M. Nicholas, BBO #653892
MINTZ, LEVIN, COHN, FERRIS
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

Dated: April 12, 2005

## CERTIFICATE OF SERVICE

I, James M. Nicholas, attorney for the plaintiff, Heidi A. Baer, hereby certify that a true copy of the Memorandum of Law in Support of Plaintiff's Motion for a Permanent and Preliminary Injunction, was served on Tuesday, April 12, 2005, by hand upon the attorney for defendant National Board of Medical Examiners at the following address:

Joseph F. Savage, Esq.
Goodwin Proctor, LLP
Exchange Place
53 State Street
Boston, MA 02109

James M. Nicholas, Esq.

DATED:

LIT 1514976v2

### Local Rule 7.1(A)(2) Certificate

I, James M. Nicholas, counsel for the Plaintiff Heidi A. Baer hereby certify that I have attempted to confer with Defendant's counsel, in an effort to resolve the issues addressed in this Motion, but those efforts were unsuccessful.

_____ 4/12/05

James M. Nicholas

LIT 1510363v2