IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEIDI A. BAER,<br><br>                             Plaintiff,<br><br>v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br>                             Defendant. | CIVIL ACTION NO. 1:05-cv-10724 |

## AMENDED SECOND AFFIDAVIT OF DR. CHERYL WEINSTEIN TO CORRECT TYPOGRAPHICAL ERROR

I, Dr. Cheryl Weinstein, do hereby depose and state as follows:

1. As I stated in my initial affidavit, I am a diplomate in clinical neuropsychology, a member of the American Board of Professional Psychology, and an expert in the field of diagnosing learning disabilities. A copy of my curriculum vitae is attached to my initial affidavit as *Exhibit A*.

2. I am submitting this affidavit, in addition to my previous affidavit dated April 21, 2005, to respond to a number of statements and conclusions made by the medical experts retained by the defendant National Board of Medical Examiners ("NBME") in this case. In submitting this affidavit, I rely on my Neuropsychological Consultation Report of Heidi A. Baer (the "Report"), which was prepared after I personally examined Ms. Baer in late-October and early-November 2004, and the Affidavits of Drs. Joseph E. Bernier, Ph.D. and Kevin R. Murphy, Ph.D., submitted on behalf of the NBME.

3. As stated in my report, I personally administered a number of diagnostic tests to determine whether or not Ms. Baer suffers from learning and/or reading impairments. Ms. Baer scored below average on a number of these diagnostic tests, including:

    a. The California Verbal Learning Test (Second Edition), according to which Ms. Baer tested at two standard deviations below the mean;

    b.    The Woodcock Johnson Diagnostic Reading Battery (22nd percentile rank for sound blending when compared to individuals her age; 18th percentile rank for listening comprehension when compared to individuals her age; 2nd percentile rank for listening comprehension when compared to individuals with four years of college);

    c.    The Woodcock -Johnson Test of Achievement-III (17th percentile rank for academic fluency; 13th percentile rank for reading fluency);

    d.    The Nelson-Denny Reading Test-Form G (3rd percentile rank for reading comprehension under timed conditions, when compared to individuals with four years of college; 9th percentile rank for reading comprehension test with extended time, when compared to individuals with four years of college) (23rd percentile rank 13 yrs. School);

    e.    The Rey-Osterrieth Complex Figure Test (16th percentile rank).

4.    As is evidenced by the above test scores, Ms. Baer scored well below average on ten diagnostic tests. According to Dr. Bernier's interpretation of Ms. Baer's test scores as contained in his affidavit, however, Ms. Baer scored below average on only one diagnostic test - the Woodcock-Johnson III Reading Fluency test.

5.    In making this assessment, Dr. Bernier assumes that scores falling between the 16th and 86th percentiles are within the "average range." Notwithstanding Dr. Bernier's analysis, in my professional opinion, he uses a standard which is simply too harsh, and does not accurately reflect an individual's abilities as compared to most people. Put another way, someone who scores worse than 75% of the population scores worse than "most people."

6.    Instead, in my opinion, the appropriate measure of scores falling with the "average range" fall between the 25th and 75th percentile. This is the standard of measurement I used when evaluating Ms. Baer. Applying this standard to Ms. Baer's diagnostic tests scores, she fell below the "average range" on ten of the diagnostic tests that I administered. This indicates to me that Ms. Baer does, in fact, suffer from a learning impairment, which inhibits her ability to read and comprehend the written word as compared to the average population.

2

7.  Furthermore, Dr. Bernier goes to great lengths to compare the results from my evaluation of Ms. Baer to those of Dr. Marilyn Engelman. Indeed, Dr. Bernier notes that, in his estimation, Ms. Baer scored in the "below average" range on only one diagnostic (Woodcock-Johnson III), which I administered. He then notes that the results on this test "reflect a substantial, unexpected, and inexplicable drop of 44 percentile point drop in performance from the Woodcock-Johnson III Reading Fluency test score obtained by Dr. Engelman only eight months earlier."

8.  What Dr. Bernier fails to state, however, is that Ms. Baer's performance on the diagnostic tests which I administered are consistent with her performance on the same or similar tests administered by Dr. Christopher Connolly, Ph.D. or Dr. Penny Prather, Ph.D. In fact, neither Dr. Bernier nor Dr. Murphy refer, in any substantive fashion, to the reports of either Dr. Connolly and Dr. Prather. In my opinion, Ms. Baer's score for reading fluency on the diagnostic test administered by Dr. Engelman is an aberration, and the relevant comparison of Ms. Baer's diagnostic performance is between her scores on the tests administered by myself, Dr. Connolly and Dr. Prather.

9.  In addition, it is important to note that neither Dr. Bernier nor Dr. Murphy made mention of Ms. Baer's diagnostic test scores on the well-known and well-respected California Verbal Learning Test (Second Edition). On that diagnostic, Ms. Baer tested as two standard deviations below the mean. This represents a substantial deficit as compared to the general population. In my professional opinion, such a score indicates that Ms. Baer is substantially impaired in terms of her ability to learn, organize and retrieve language rapidly as compared to most people.

10. Moreover, in my opinion, there are numerous ways that an individual's learning disability can be diagnosed. On its website, however, the NBME officially recognizes only a handful of diagnostic tests as being appropriate measures of a person's learning disability, including the Wechsler Adult Intelligence Scale-III, the Woodcock Johnson Psychoeducational Battery-III, the Kaufman Adolescent and Adult Intelligence Test, the Scholastic Abilities Test for Adults, the

3

Woodcock Reading Master Test-Revised, the Detroit Tests of Learning Aptitude and the Wechsler Memory Scale-III. (A copy of the NBME's policy regarding diagnostic measures of learning disabilities is attached hereto as *Exhibit A*.) Notwithstanding the NBME's reliance on the above diagnostic tests, many of which I administered to Ms. Baer, other diagnostics, including the California Verbal Learning Test, the Nelson-Denny Reading Test and the Rey Osterrieth Complex Figure test, are commonly used by experts in the field of learning disabilities to determine whether an individual is impaired. Indeed, I administered each of these tests to Ms. Baer and the results of these diagnostics establish that she suffers from a disability. For example, as indicated above, Ms. Baer scored in the 16th percentile on the Rey-Osterrieth Complex Figure test. (A copy of the "Rey" figure is attached hereto as *Exhibit B*). This result indicates significant impairment in visual spatial planning, organization and memory, and acts as further indicia that Ms. Baer suffers from a learning disability.

11.    Based on Ms. Baer's diagnostic test results and my review of her medical records, history of accommodations dating back to the fifth grade and family history, I concluded that Ms. Baer suffers from a learning disability that substantially impairs her ability to read and comprehend the written word as compared to most people. In addition, while I did not assign a formal DSM-IV diagnosis in my Report, it is clear that Ms. Baer suffers from a learning disorder, not otherwise specified, DSM-IV 315.9. Unfortunately, the DSM-IV is incomplete with regard to its coverage of learning disorders. For example, there is no DSM-IV diagnosis for "language based learning disorders," a condition that afflicts Ms. Baer, nor is there a diagnosis for "non-verbal learning disorders," which is another major learning disorder. Presence of either of these two types of learning disorders indicates significant learning issues, and their absence from the DSM-IV manual demonstrates that the DSM is deficient in its assessment of learning disorders.

12.    Finally, the NBME asserts that Ms. Baer's alleged impairment only affects her ability to take timed standardized tests on medical topics. This averment, however, is not supported by my

4

findings. I specifically concluded "it is clear that a learning impairment that substantially limits her ability to read rapidly, to organize information and rapidly plan how to proceed is present and represents a deficit when compared to the general population. . . . Moreover, her problems rapidly retrieving language make it harder for her to learn and quickly demonstrate what she knows." While this impairment manifests itself most obviously when Ms. Baer attempts to complete timed-examinations, it is by no means limited to this activity. Indeed, as a result of Ms. Baer's disability, she will continue to struggle with day-to-day activities involving reading for the rest of her life. These activities will take her longer to complete and will be far more difficult for her to accomplish than they should be given her intelligence.

Signed under the penalties of perjury this 26ᵗʰ day of April, 2005.

_____ Cheryl Weinstein PhD ABPP
Dr. Cheryl Weinstein, Ph.D., ABPP

April 26, 2005

LIT 1517225v1

# EXHIBIT A



## USMLE Test Accommodations

**A TOOL IS AVAILABLE FOR VISUALLY IMPAIRED USERS. GO TO www.aisquared.com AND CLICK ON THE "FREE TRIAL SOFTWARE" LINK ON THE NAVIGATION BAR TO THE LEFT OF THE SCREEN.**

How to request test accommodations | Introduction | General guidelines for all disabilities | Learning disabilities | Attention deficit / hyperactivity disorder (ADHD) | What to do | Download forms

### Learning Disabilities

The following additional information is provided to clarify the documentation process for applicants submitting a request for accommodations based on a learning disability or other cognitive impairment.

1. The evaluation must be conducted by a qualified professional.
The diagnostician must have comprehensive training in the field of learning disabilities and must have comprehensive training and direct experience in working with an adult population.

2. Testing/assessment must be current.
The determination of whether an individual is significantly limited in functioning is based on assessment of the current impact of the impairment. (See General Guidelines). A developmental disorder such as a learning disability originates in childhood and, therefore, information which demonstrates a history of impaired functioning should also be provided.

3. Documentation must be comprehensive.
Objective evidence of a substantial limitation in cognition or learning must be provided. At a minimum, the comprehensive evaluation should include the following:

- **A diagnostic interview and history taking**
  Because learning disabilities are commonly manifested during childhood, though not always formally diagnosed, relevant historical information regarding the individual's academic history and learning processes in elementary, secondary and postsecondary education should be investigated and documented. The report of assessment should include a summary of a comprehensive diagnostic interview that includes relevant background information to support the diagnosis. In addition to the candidate's self-report, the report of assessment should include:
    o A description of the presenting problem(s)
    o A developmental history
    o Relevant academic history including results of prior standardized testing, reports of classroom performance and behaviors including transcripts, study habits and

  - attitudes and notable trends in academic performance
  - Relevant family history, including primary language of the home and current level of fluency in English
  - Relevant psychosocial history
  - Relevant medical history including the absence of a medical basis for the present symptoms
  - Relevant employment history
  - A discussion of dual diagnosis, alternative or co-existing mood, behavioral, neurological and/or personality disorders along with any history of relevant medication and current use that may impact the individual's learning
  - Exploration of possible alternatives that may mimic a learning disability when, in fact, one is not present.

- **A psychoeducational or neuropsychological evaluation**
  The psychoeducational or neuropsychological evaluation must be submitted on the letterhead of a qualified professional and it must provide clear and specific evidence that a learning or cognitive disability does or does not exist.
  - Assessment must consist of a comprehensive battery of tests
  - A diagnosis must be based on the aggregate of test results, history and level of current functioning. It is not acceptable to base a diagnosis on only one or two subtests.
  - Objective evidence of a substantial limitation to learning must be presented.
  - Tests must be appropriately normed for the age of the patient and must be administered in the designated standardized manner.

  Minimally, the domains to be addressed should include the following:
- *Cognitive Functioning*
  A complete cognitive assessment is essential with all subtests and standard scores reported. Acceptable measures include but are not limited to: Wechsler Adult Intelligence Scale-III (WAIS-III); Woodcock Johnson Psychoeducational Battery - III (WJ-III): Tests of Cognitive Ability; Kaufman Adolescent and Adult Intelligence Test.
- *Achievement*
  A comprehensive achievement battery with all subtests and standard scores is essential. The battery must include current levels of academic functioning in relevant areas such as reading (decoding and comprehension) and mathematics. Acceptable instruments include, but are not limited to, the Woodcock-Johnson Psychoeducational Battery - III (WJ-III): Tests of Achievement; The Scholastic Abilities Test for Adults (SATA); Woodcock Reading Mastery Tests-Revised.
  Specific achievement tests are useful instruments when administered under standardized conditions and when interpreted within the context of other diagnostic information. The Wide Range Achievement Test-3 (WRAT-3) and the Nelson-Denny Reading Test are not comprehensive diagnostic measures of achievement and therefore neither is acceptable if used as the sole measure of achievement.
- *Information Processing*
  Specific areas of information processing (e.g., short- and long-term memory, sequential memory, auditory and visual perception/processing, auditory and phonological awareness, processing speed, executive functioning, motor ability) must be assessed. Acceptable measures include, but are not limited to, the Detroit Tests of Learning Aptitude - Adult (DTLA-A), Wechsler Memory Scale-III (WMS-III), information from the Woodcock Johnson Psychoeducational Battery - III (WJ-III): Tests of Cognitive Ability, as well as other relevant instruments that may be used to address these areas.
- *Other Assessment Measures*
  Other formal assessment measures or nonstandard measures and informal assessment procedures or observations may be integrated with the above instruments

to help support a differential diagnosis or to disentangle the learning disability from coexisting neurological and/or psychiatric issues. In addition to standardized test batteries, nonstandardized measures and informal assessment procedures may be helpful in determining performance across a variety of domains.

**Actual test scores must be provided (standard scores where available)**
as well as identification of norms used to interpret the data. It is helpful to list all test data in a score summary sheet appended to the evaluation.

**Records of academic history should be provided.**
Because learning disabilities are most commonly manifested during childhood, relevant records detailing learning processes and difficulties in elementary, secondary and postsecondary education should be included. Such records as grade reports, transcripts, teachers' comments and the like will serve to substantiate self-reported academic difficulties in the past and currently.

**A differential diagnosis must be reviewed and various possible alternative causes for the identified problems in academic achievement should be ruled out.**
The evaluation should address key constructs underlying the concept of learning disabilities and provide clear and specific evidence of the information processing deficit(s) and how these deficits currently impair the individual's ability to learn. No single test or subtest is a sufficient basis for a diagnosis.

The differential diagnosis must demonstrate that:

- Significant difficulties persist in the acquisition and use of listening, speaking, reading, writing or reasoning skills.
- The problems being experienced are not primarily due to lack of exposure to the behaviors needed for academic learning or to an inadequate match between the individual's ability and the instructional demands.

**A clinical summary must be provided.**
A well-written diagnostic summary based on a comprehensive evaluative process is a necessary component of the report. Assessment instruments and the data they provide do not diagnose; rather, they provide important data that must be integrated with background information, historical information and current functioning. It is essential then that the evaluator integrate all information gathered in a well-developed clinical summary. The following elements must be included in the clinical summary:

- Demonstration of the evaluator's having ruled out alternative explanations for the identified academic problems as a result of poor education, poor motivation and/or study skills, emotional problems, attentional problems and cultural or language differences;
- Indication of how patterns in cognitive ability, achievement and information processing are used to determine the presence of a learning disability;
- Indication of the substantial limitation to learning presented by the learning disability and the degree to which it impacts the individual in the context of the USMLE™;
- Indication as to why specific accommodations are needed and how the effects of the specific disability are mediated by the recommended accommodation(s).

Problems such as test anxiety, English as a second language (in and of itself), slow reading without an identified underlying cognitive deficit or failure to achieve a desired academic outcome are not learning disabilities and therefore are not covered under the Americans with Disabilities Act.

### Each accommodation recommended by the evaluator must include a rationale.

The evaluator must describe the impact the diagnosed learning disability has on a specific major life activity as well as the degree of significance of this impact on the individual. The diagnostic report must include specific recommendations for accommodations and a detailed explanation as to why each accommodation is recommended. Recommendations must be tied to specific test results or clinical observations. The documentation should include any record of prior accommodation or auxiliary aids, including any information about specific conditions under which the accommodations were used and whether or not they were effective. However, a prior history of accommodation, without demonstration of a current need, does not in and of itself warrant the provision of a like accommodation. If no prior accommodation(s) has been provided, the qualified professional expert should include a detailed explanation as to why no accommodation(s) was used in the past and why accommodation(s) is needed at this time.

# EXHIBIT B

Case 1:05-cv-10724-GAO   Document 17   Filed 04/26/2005   Page 12 of 14

10/31/2004



3. COPYING A COMPLEX FIGURE

(Rey, 1941), (Osterrieth, 1944). (Copyright, Archives de Psychologie). (Reprinted with permission).

| Score |
|---|
| 1 ___ |
| 2 ___ |
| 3 ___ |
| 4 ___ |
| 5 ___ |
| 6 ___ |
| 7 ___ |
| 8 ___ |
| 9 ___ |
| 10 ___ |
| 11 ___ |
| 12 ___ |
| 13 ___ |
| 14 ___ |
| 15 ___ |
| 16 ___ |
| 17 ___ |
| 18 ___ |
| 19 ___ |
| 20 ___ |
| 21 ___ |
| 22 ___ |
| 23 ___ |
| 24 ___ |
| TOTAL ___ |

