UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10724-GAO

HEIDI A. BAER,
Plaintiff,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,
Defendant.

MEMORANDUM AND ORDER
May 3, 2005

O'TOOLE, D.J.

The plaintiff Heidi A. Baer, a medical student at Drexel University College of Medicine, seeks a preliminary injunction commanding the defendant National Board of Medical Examiners ("NBME") to permit her to have extended time in taking Step 1 of the United States Medical Licensing Examination ("USMLE"). Baer alleges that the defendant's refusal to accommodate her request for a testing period that is one and a half times as long as the normal test period to take the USMLE violates the American With Disabilities Act ("ADA"), 42 U.S.C. § 12189, and the Massachusetts public accommodation statute, Mass. Gen. Laws ch. 272, § 98. She predicts that unless she is allowed extra time she will likely fail the exam and consequently she will be dismissed from medical school. After careful review of the parties' briefs and supporting affidavits, and after oral argument, I conclude that the plaintiff's motion for a preliminary injunction ought to be denied.

**I.     Factual Background**

The USMLE is a national standardized test administered by the NBME, a non-profit organization. The test is given under strict time limitations. There are three parts, given separately, commonly referred to as Steps 1, 2, and 3. In order to obtain medical licensure, a prospective doctor such as Baer is required to pass all three steps. Drexel requires its students to take Step 1 before continuing with their third year of medical school, and generally expels students who cannot pass Step 1 after three attempts. Baer has taken and failed Step 1 of the USMLE on three occasions prior to filing this lawsuit. On October 1, 2004, Drexel approved her request to take Step 1 a fourth time, but notified her that this would be her final attempt.

Step 1 is offered year-round. An examinee registers for a three month eligibility period during which she must take the exam. It is the examinee's responsibility to schedule a test date within the three month period. If an examinee is unable to take Step 1 within her eligibility period, an extension is available to take the test during the next contiguous three month eligibility period.

Baer is eligible to take Step 1 at any time from May 1, 2005 through July 31, 2005. She has selected May 5, 2005 as her test date because she has completed a test preparation review course as of the end of April, and she wants to maximize the effects of the review course, hoping thereby to increase her chances of passing the exam. She also needs a passing score on Step 1 to enroll in internship programs required of third year medical students at Drexel, which begin on July 4, 2005.

The basis for Baer's claim for an extended time accommodation is that she suffers from a learning disability, which impairs her ability to read, comprehend and process written material at the same rate as most people. She also claims to suffer from Attention Deficit Hyperactivity Disorder ("ADHD"), which limits her ability to focus and concentrate. These conditions are said to interfere

with her ability to effectively demonstrate her knowledge of the tested subject matter on timed standardized tests, such as the USMLE. If she is given a time accommodation, she can minimize the interference of her impairments with her test performance and give a true indication of her knowledge of the subject matter.

Baer's academic history includes extended time accommodations. In grammar school, on an apparently informal basis, Baer was given some time latitude in taking quizzes and tests. More recently, in preparation for medical school, Baer took the Medical College Admission Test ("MCAT") three times – the first two times without any time accommodation and the third time with an accommodation that allowed her time and a half, which was granted by the test administrator after Baer submitted a report from Dr. Christopher Connolly, Ph.D. diagnosing her with a learning disability (dyslexia; reading disorder). On the accommodated third test, Baer's MCAT score went up substantially over the first two tests. At Drexel, Baer has also requested and received extra time on exams.

Her academic history also indicates that she has sometimes performed in the mid-average range on timed tests without any accommodation. In high school, she took the Scholastic Aptitude Test ("SAT") three times without any time accommodations and received scores generally in the range of the national mean for female test-takers. After high school, Baer attended Duke University, graduating with a cumulative 2.95 average. She performed well in the field of her major (English), largely, she says, because her academic performance in that major was not measured by timed exams. However, she was less successful in math and science classes. She attributes the performance differential to the fact that the math and science courses evaluated performance using timed tests, without time accommodations.

3

On each of the three prior occasions when Baer has taken Step 1 of the USMLE, she requested and was denied additional time to complete the exam. In November 2004, she applied for a time accommodation for her fourth attempt at Step 1. In support of her applications for an accommodation, she has provided the NBME with five doctors' reports indicating that she suffers from a reading disorder and from ADHD, a personal statement, her grade school evaluations, and her undergraduate and medical school transcripts.

The NBME submitted the materials she provided to its own expert advisers, who concluded that she had not shown that she had a learning/reading disability or ADHD so as to warrant being granted extended time on the exam. Relying on these conclusions, on January 14, 2005, the NBME denied her request for an accommodation. On April 12, 2005, Baer filed this action and her motion for a preliminary injunction. A hearing on the motion was held on April 28, 2005. Baer seeks a mandatory preliminary injunction ordering the NBME to provide her with time and a half when she takes Step 1 of the USMLE on May 5.

**II.   Discussion**

A plaintiff seeking a preliminary injunction in an ADA case must demonstrate (1) that she has a likelihood of success on the merits of her claim; (2) that she will suffer irreparable harm if the injunction is denied; (3) that the balance of hardships favors the issuance of an injunction; and (4) that the issuance of an injunction will not adversely affect the public interest. <u>Bercovitch v. Baldwin Sch., Inc.</u>, 133 F.3d 141, 151 (1st Cir. 1998).

A.   Likelihood of Success on the Merits

The basis of the plaintiff's statutory claims is that she is "disabled" within the meaning of the ADA.[1]  She bears the initial burden of showing that she is likely to succeed in establishing that essential proposition.  Bercovitch, 133 F.3d at 155.  Under the ADA, a person has a "disability" if, as relevant here, the person has a mental impairment that substantially limits one or more major life activities.  42 U.S.C. § 12102(2).  While Baer has shown that she likely suffers from some weakness or impairment that adversely affects her ability to read, comprehend and process written material quickly, she has not shown that she is likely to succeed in demonstrating that her impairment has such a severe impact on her that it can properly be regarded as "substantially limiting" her in a "major life activity," so as to amount to a "disability" for which the ADA provides remedial protection.

It must be understood that there is, at least potentially, a difference between what a psychologist may mean when she uses the term "disability," and what the relevant statute means when it uses that term.  It is possible for a person to be diagnosed by a psychologist as having a "learning disability," for example, and yet not be considered to have a "disability" within the meaning of the ADA.  As the Supreme Court has succinctly put it, "Merely having an impairment does not make one disabled for purposes of the ADA.  Claimants also need to demonstrate that the impairment limits a major life activity."  Toyota Motor Mfg., Inc. v. Williams, 534 U.S. 184, 195 (2002).  "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment."  Id. at 198.  See also Lessard v. Osram Sylvania,

---

[1] The parties agree that the Massachusetts public accommodation statute provides the same kinds of protections as the ADA and requires a similar analysis.  They have not suggested that I conduct separate analyses under state and federal law, and accordingly, I address the issue in terms of the federal statute and its standards of proof.

Inc., 175 F.3d 193, 197 (1st Cir. 1999) ("Under the ADA, not all impairments lead to protection. Only those impairments which substantially limit a major life activity do so.") (internal citation omitted).

The plaintiff relies on the reports of psychologists who have administered a variety of assessment tests in support of her claim that she has a learning disability and/or ADHD. The defendant responds with affidavits from experts criticizing the conclusions of the plaintiff's experts and disagreeing that the tests show that she has either. At this stage, it seems the ADHD diagnosis is suspect: It has surfaced only very late in the series of evaluations of the plaintiff occurring over many years, and it is not made in conformity with the generally accepted standards of the American Psychiatric Association's Diagnostic and Statistical Manual, Fourth Edition ("DSM-IV"). On the other hand, it appears that the plaintiff does have a well-documented weakness in reading fluency and comprehension, though the seriousness of the deficit is disputed. Overall, the plaintiff's performance on the diagnostic testing was within the average range, sometimes low average, sometimes high, with occasional scores above and below the average range.

There is also an apparent gap between the plaintiff's very high IQ scores and her actual performance on certain tasks that suggests an impairment of some kind and degree. It may be granted that evidence of a disparity between a person's overall intelligence, IQ, or ability and her actual performance on exams or in school generally might support a finding of a mental impairment. See Gonzales v. Nat'l Bd. of Med. Exam'rs, 225 F.3d 620, 629 (6th Cir. 2000), cert. denied, 532 U.S. 1038 (2001). On the other hand, poor performance on exams might also be attributable to numerous other factors, such as anxiety, stress, nervousness, cautiousness, poor organization, poor time management, lack of motivation, lack of appropriate preparation, or weakness in a particular subject

6

matter. Argen v. New York State Bd. of Law Exam'rs, 860 F. Supp. 84, 88 (W.D.N.Y. 1994); Pazer v. New York State Bd. of Law Exam'rs, 849 F. Supp. 284, 287 (S.D.N.Y. 1994). Some of these factors are present in Baer's case. See, e.g., Weinstein Report (Compl. Ex. A) at 4 (noting her "poor organization" and "idiosyncratic strategy"); Forman/Kerns Report (Compl. Ex. M) at 2 (indicating Baer's belief that she is not an "effective studier" because she is "too into the details"); Prather Report (Compl. Ex. P) at 3, 10 (noting her "reduced attention/organization skills," "mild obsessiveness," and "test anxiety"); Duke Tr. (Compl. Ex. E) (reflecting lower performance in math and science classes relative to other subjects).

The ADA "create[s] a demanding standard for qualifying as disabled," requiring that the terms "substantially limits" and "major life activity" "be interpreted strictly." Toyota, 534 U.S. at 197. A "major life activity" is one that is "of central importance to daily life." Id. Baer argues that her impairment substantially limits the major life activities of learning and reading. Reading and learning may be considered major life activities, see Bercovitch, 133 F.3d at 155 ("[L]earning is a major life activity."); Bartlett v. New York State Bd. of Law Exam'rs, 226 F.3d 69, 80 (2d Cir. 2000) (holding that reading is a "major life activity"), but Baer's evidence does not show that her reading weakness affects her in her activities of daily life. Her claim is that she is disadvantaged when required to take standardized tests under regulated time pressure. See, e.g., Connolly Report (Compl. Ex. H) at 3 ("she presents as having a reading disorder, but this is primarily the function of speed."), Prather Report (Compl. Ex. P) at 7 ("current findings reflected superior logical, analytic reasoning on both verbally and visually mediated tasks – though not when time constraints were imposed."). The specific task of taking timed tests, however, is not the kind of "major life activity" protected under the ADA. Cf. 28 C.F.R. § 36.104(2) ("The phrase major life activities means functions such as caring

7

for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.").

"Substantially limits" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii); see also Toyota, 534 U.S. at 198 ("[A]n individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.") (emphasis added) (addressing a physical impairment); Knapp v. Northwestern Univ., 101 F.3d 473, 481 (7th Cir. 1996) (With respect to an impairment that affects the major life activity of learning, "'[t]he impairment must limit [learning] generally.' . . . An impairment that interferes with an individual's ability to perform a particular function, but does not significantly decrease that individual's ability to obtain a satisfactory education otherwise, does not substantially limit the major life activity of learning.") (emphasis in original) (citation omitted), cert. denied, 520 U.S. 1274 (1997).

In Calef v. Gillette Co., 322 F.3d 75 (1st Cir. 2003), the plaintiff claimed that when he was under stress, his ADHD led him to lose the ability to express himself coherently and made him prone to explosive outbursts. He asserted that his impairment substantially limited him in his major life activities of speaking and learning and that his employer violated the ADA when it fired him after one such outburst. The First Circuit concluded he had not shown that he had a "disability" within the meaning of the ADA because he had not shown a general effect on his ability to learn or speak in every day life. Id. at 85. Episodic effects of the impairment was not enough to show that his ADHD substantially limited a major life activity. Id. at 86.

Baer acknowledges that her prior educational and testing experiences demonstrate that her impairment is not substantially limiting when she is not under time pressure. As she points out, she performed well at Duke as an English major where she did not have to take many timed tests. In addition, as noted above, she has exhibited predominantly average diagnostic test scores in the psychologists' reports. In sum, Baer has not shown she is likely to succeed in demonstrating that she has an impairment that substantially limits her learning or reading generally. See Wong v. Regents of the Univ. of California, 379 F.3d 1097, 1109-10 (9th Cir. 2004).[2]

For these reasons, Baer has not met her burden of showing that she is likely to succeed in establishing that she is "disabled" as that term is specifically understood for purposes of applying the ADA.

B.   Irreparable Harm

Although inability to show a likelihood of success on the merits is alone enough to deny the motion for a preliminary injunction, Baer has also failed to demonstrate that she would suffer irreparable harm absent a preliminary injunction. Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004) ("[I]rreparable harm is a necessary threshold showing for awarding preliminary injunctive relief."). "'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication

---

[2] Even if taking timed tests could be considered a "major life activity," the record is ambiguous as to whether her impairment affects to a substantial degree her ability to take timed tests. Baer's scores on the timed SAT, which she took three times without any accommodations, were more or less in line with the national mean score for female test-takers. She did, however, perform relatively poorly on the MCAT (her first two attempts), the USMLE, and in math and science classes at Duke which she says involved timed tests. This evidence may suggest that any impairment she has substantially limits only her performance on timed math and science tests, not timed tests generally.

on the merits, or by a later-issued damages remedy." Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005); see also Massachusetts Coalition of Citizens with Disabilities v. Civil Def. Agency and Office of Emergency Preparedness, 649 F.2d 71, 74 (1st Cir. 1981) ("Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined."). Baer claims that unless she is allowed extra time on Step 1 she will likely fail the exam a fourth time and suffer the irreparable harm of being dismissed from medical school.

First of all, it is not certain that she will suffer the predicted harm; she may pass the test. Moreover, her inability to continue as a medical student without interruption at Drexel, while desirable, is not a harm that is irreparable to Baer's potential medical career. The record indicates that she may plausibly seek admission to other medical schools that, unlike Drexel, do not condition matriculation on passing the Step 1 exam.

Nor is any harm necessarily imminent. Baer is eligible to take Step 1 until July 31, 2005. She might also have a second three month window within which to take the exam if allowed an extension. Her reasons for selecting the May 5 test date – a desire to maximize the effects of a review course and report her scores to Drexel as soon as possible so that she can continue with medical school without interruption – are understandable, but it is an exaggeration to say that not achieving them amounts to irreparable harm.

It may also be noted that Baer brought this action for injunctive relief only three weeks before her scheduled test date, but three months after the NBME denied her fourth request for an accommodation. The NBME's most recent denial of her request, like the three before it, was based on its conclusion that Baer had not shown that she was disabled within the meaning of the ADA.

10

Around the same time the NBME denied her request for an accommodation Baer began her review course for the exam. She knew in mid-January of this year that she was once again faced with the prospect of taking Step 1 without an accommodation. Furthermore, she knew that if she were to fail on this fourth attempt that she would likely be dismissed from Drexel. On an expedited schedule, a full adjudication on the merits could be completed within the period of her eligibility for the Step 1 exam. If Baer believed her lifelong dream of becoming a doctor was about to come to an end, as she alleges in her verified complaint, then perhaps her pursuit of a judicial remedy should have been more expeditious. Her slowness in filing this action after receiving the NBME's denial letter is unexplained, and any consequent time binds she faces are self-inflicted. See San Francisco Real Estate Inv. v. Real Estate Inv. Trust of America, 692 F.2d 814, 818 (1st Cir. 1982); Pazer, 849 F. Supp. at 287-88.

**III.    Conclusion**

Because the plaintiff is unable to demonstrate a likelihood of success on the merits of her claims, or the likelihood of irreparable harm absent a preliminary injunction, her motion for a preliminary injunction is DENIED.

If is SO ORDERED.

May 3, 2005                                                          \s\ George A. O'Toole, Jr.
DATE                                                                 DISTRICT JUDGE